**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| LATORSHA ADAMS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| *Plaintiff*, | ) ) | Civil Action No. 3:20-cv-3603-K |
| v. | ) ) ) | |
| DICKEY'S BARBECUE RESTAURANTS, INC., and DICKEY'S CAPITAL GROUP, | ) ) ) ) | |
| *Defendants*. | ) ) | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND BRIEF IN SUPPORT**

Christopher S. Dodrill
Texas Bar No. 24110696
dodrillc@gtlaw.com
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 76262
Tel.: (214) 665-3600
Fax: (214) 665-3601

Ian C. Ballon (admitted pro hac vice)
ballon@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Tel.: (650) 289-7881
Fax: (650) 328-8508

*Counsel for Defendants*
*Dickey's Barbecue Restaurants, Inc. and*
*Dickey's Capital Group, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 3

III. APPLICABLE LEGAL STANDARD ................................................................. 4

IV.  ARGUMENT AND AUTHORITIES ................................................................. 5

    A. Plaintiff Fails to Plausibly Plead Causation and Damages ........................... 5

        1. Plaintiff Does Not Allege That She Made a Payment Card Purchase at Any Dickey's Franchised Restaurant ........................................................................................ 6

        2. Plaintiff Does Not Plausibly Allege Causation .......................................... 7

        3. Plaintiff Does Not Plausibly Allege Damages ........................................... 8

    B. Plaintiff's Invasion of Privacy Claim (Count II) Fails .................................. 9

    C. Plaintiff's Breach of Implied Contract Claim (Count III) Fails .................... 11

    D. Plaintiff's Unjust Enrichment Claim (Count IV) Fails .................................. 12

    E. Plaintiff's Breach of Fiduciary Duty Claim (Count V) Fails ........................ 13

    F. Plaintiff's Breach of Confidence Claim (Count VI) Fails ............................. 15

    G. Plaintiff Alleges No Actionable Conduct Against DCG ............................... 16

V.   CONCLUSION ................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ables v. Brooks Bros. Grp., Inc.*,
  No. CV 17-4309-DMG (Ex), 2018 U.S. Dist. LEXIS 154681 (C.D. Cal. June 7, 2018) ........ 13

*Amin v. UPS*,
  No. 3:19-cv-02578-X, 2020 U.S. Dist. LEXIS 107651 (N.D. Tex. June 18, 2020)................. 12

*ARA Auto. Grp. v. Cent. Garage, Inc.*,
  124 F.3d 720 (5th Cir. 1997) ........................................................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................... 8

*Atkins v. Hasan*,
  No. 15 CV 203, 2015 U.S. Dist. LEXIS 80176 (N.D. Ill. 2015)............................................ 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................... 8

*Billings v. Atkinson*,
  489 S.W.2d 858 (Tex. 1973)............................................................................................. 13

*Bos v. Smith*,
  556 S.W.3d 293 (Tex. 2018)............................................................................................... 9

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
  238 F. Supp. 3d 1359 (S.D. Fla. 2017) .............................................................................. 14

*Cunningham v. Greenstar Cap. Sols., LLC*,
  No. 4:18-cv-000161-ALM-CAN, 2018 U.S. Dist. LEXIS 163086 (E.D. Tex. Aug. 1, 2018). 12

*Derrick v. Gillman Cos.*,
  No. H-17-2834, 2018 U.S. Dist. LEXIS 38817 (S.D. Tex. Mar. 9, 2018) .............................. 14

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
  No. 3:16-cv-00014-GPC-BLM, 2016 U.S. Dist. LEXIS 152838 (S.D. Cal. Nov. 3, 2016)..... 13

*Elias v. Pilo*,
  781 F. App'x 336 (5th Cir. 2019) (per curiam) ...................................................................... 15

*Fawcett v. Grosu*,
  498 S.W.3d 650 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) .................................. 12

*First United Pentecostal Church v. Parker*,
  514 S.W.3d 214 (Tex. 2017)............................................................................................. 16

*Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*,
  55 F.3d 181 (5th Cir. 1995) ............................................................................................... 17

*Galaria v. Nationwide Mut. Ins. Co.*,
  No. 2:13-cv-118, 2017 U.S. Dist. LEXIS 185166 (S.D. Ohio Aug. 16, 2017) ....................... 10

*Gordon v. Chipotle Mexican Grill, Inc.*,
    344 F. Supp. 3d 1231 (D. Colo. 2018) .................................................................................. 15

*Haase v. Countrywide Home Loans, Inc.*,
    No. H-12-1538, 2012 U.S. Dist. LEXIS 192474 (S.D. Tex. Nov. 1, 2012) ........................... 18

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
    No. 14-MD-2586 ADM/TNL, 2018 U.S. Dist. LEXIS 36944 (D. Minn. Mar. 7, 2018), *aff'd*
    No. 18-1648, 2019 U.S. App. LEXIS 16291 (8th Cir. May 31, 2019) .................................... 10

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
    870 F.3d 763 (8th Cir. 2017) ................................................................................................. 13

*In re Zappos.com, Inc.*,
    No. 3:12-cv-00325-RCJ-VPC, 2013 U.S. Dist. LEXIS 128155 (D. Nev. Sep. 9, 2013) ......... 14

*Irwin v. Jimmy John's Franchise, LLC*,
    175 F. Supp. 3d 1064 (C.D. Ill. 2016) ................................................................................... 15

*Longenecker-Wells v. Benecard Servs. Inc.*,
    658 F. App'x 659 (3d Cir. 2016) ........................................................................................... 14

*Lovell v. P.F. Chang's China Bistro, Inc.*,
    No. C14-1152RSL, 2015 U.S. Dist. LEXIS 112101 (W.D. Wash. Mar. 27, 2015) ................ 14

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
    289 S.W.3d 844 (Tex. 2009) ................................................................................................. 14

*McAfee, Inc. v. Agilysys, Inc.*,
    316 S.W.3d 820 (Tex. App.—Dallas 2010, no pet.) ............................................................... 16

*Meyer v. Cathey*,
    167 S.W.3d 327 (Tex. 2005) (per curiam) ............................................................................. 16

*Mustafa v. Pennington*,
    No. 03-18-00081-CV, 2019 Tex. App. LEXIS 3253 (Tex. App.—Austin Apr. 24, 2019, no
    pet.) ....................................................................................................................................... 9

*Nabors Drilling, U.S.A., Inc. v. Escoto*,
    288 S.W.3d 401 (Tex. 2009) .................................................................................................. 9

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ................................................................................................. 8

*Raj v. La. State Univ.*,
    714 F.3d 322 (5th Cir. 2013) ................................................................................................. 8

*Reardon v. LightPath Techs., Inc.*,
    183 S.W.3d 429 (Tex. App.—Houston [14th Dist.] 2005, no pet.) .......................................... 11

*Roach v. Berland*,
    No. 3:13-cv-4640-D, 2015 U.S. Dist. LEXIS 115786 (N.D. Tex. Aug. 31, 2015) ................. 15

*Robbins Ranch Subdivision Homeowners' Ass'n v. Partners of Benchmark Props., L.P.*,
No. 12-18-00317-CV, 2019 Tex. App. LEXIS 3913 (Tex. App.-Tyler May 15, 2019, pet.
denied) (mem. op.)...........................................................................................................17

*Schlumberger Tech. Corp. v. Swanson*,
959 S.W.2d 171 (Tex. 1997)..........................................................................................16

*Stephanz v. Laird*,
846 S.W.2d 895 (Tex. App.—Houston [1st Dist.] 1993, pet. denied)....................................16

*Tavana v. GTE Sw.*,
No. 05-97-00664-CV, 1999 Tex. App. LEXIS 5365 (Tex. App.—Dallas July 21, 1999).......18

*Tsao v. Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332, 2021 U.S. App. LEXIS 3055 (11th Cir. 2021) ............................................13

*U.S. Sporting Prods. v. Johnny Stewart Game Calls*,
865 S.W.2d 214 (Tex. App.—Waco 1993, pet. denied)........................................................18

*Valenzuela v. Aquino*,
853 S.W.2d 512 (Tex. 1993)..............................................................................................9

*Wellogix, Inc. v. Accenture, LLP*,
788 F. Supp. 2d 523 (S.D. Tex. 2011) ...............................................................................18

**Other Authorities**

Pew Research Center, *Americans and Cybersecurity* (Jan. 26, 2018), available at

https://www.pewresearch.org/internet/2017/01/26/americans-and-cybersecurity/ .................10

**Rules**

FED. R. EVID. 201 .........................................................................................................6

Defendants Dickey's Barbecue Restaurants, Inc. ("DBRI") and Dickey's Capital Group, Inc. (improperly named as "Dickey's Capital Group") ("DCG") move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint [Dkt. 1-4], and state as follows:

## I.      INTRODUCTION

Plaintiff Latorsha Adams claims to be "a victim" of a data security incident after reading reports that a third party hacked into the computer servers of some "Dickey's Barbecue Pit" franchised restaurants, installed malware, and stole customer payment card information (the "Incident").[1] But it is unclear how, or whether, the Incident affected Plaintiff at all.

Plaintiff does not allege that she shopped at any particular Dickey's Barbecue Pit restaurant, let alone (i) that she used a payment card at an impacted restaurant (or when), (ii) that the Incident compromised her payment card data (or how), (iii) that she suffered any fraudulent charges on her payment card from the Incident, and if so, that her card issuer required her to pay those charges, or (iv) that she incurred any reasonable out-of-pocket expenses because of the Incident. Compounding this confusion, Plaintiff cites federal regulations pertaining to the security of Protected Health Information ("PHI") under the inapplicable Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and says that Defendants somehow failed to follow HIPAA regulations in securing her payment card information. Of course, DBRI is "an international restaurant franchisor,"[2] not a health care provider or other "covered entity" under HIPAA. And payment card information is not PHI. Plaintiff's Complaint is like a jigsaw puzzle, but no picture is on the box and all the corner pieces are missing. Defendants have to guess what Plaintiff's claims are supposed to look like and do not even know where to start.

---

[1] Compl. ¶ 8.
[2] *Id.* at p. 2.

Defendants deny responsibility for the Incident, which a criminal third party perpetrated in a malicious cyberattack. Yet in whatever way that Plaintiff purports to be "a victim of the Data Breach," her claims for negligence (Count I), invasion of privacy (Count II), breach of implied contract (Count III), unjust enrichment (Count IV), breach of fiduciary duty (Count V), and breach of confidence (Count VI) against Defendants fail to state a claim and should be dismissed under Rule 12(b)(6):

*First*, all of Plaintiff's claims fail because Plaintiff does not plausibly allege that the Incident proximately caused her to suffer any damages, which are essential elements of every cognizable claim in the Complaint. Indeed, it is unclear what transaction, if any, Plaintiff had with Defendants or any Dickey's franchised restaurant to begin with.

*Second*, Plaintiff's invasion of privacy claim fails because Plaintiff does not allege how a third-party criminal theft of her payment card data from a Dickey's franchised restaurant could have amounted to an intentional intrusion upon her seclusion *by Defendants* under Texas law.

*Third*, Plaintiff's breach of implied contract claim should be dismissed because buying barbecue from a Dickey's Barbecue Pit franchised restaurant with a payment card (if that is what Plaintiff alleges) did not create an implied contract with Defendants—the franchisor and its holding company—for the provision of data security services.

*Fourth*, Plaintiff's unjust enrichment claim fails because Texas does not recognize a standalone cause of action for unjust enrichment, and in any event, Plaintiff did not unjustly enrich Defendants when she paid a Dickey's franchised restaurant for food that she received.

*Fifth*, Plaintiff's breach of fiduciary duty and breach of confidence claims should be dismissed because Plaintiff and Defendants did not have any fiduciary or pre-existing special

relationship of trust and confidence, and Defendants' duty cannot be found in the HIPAA Security Rule, as Plaintiff suggests.

And *finally*, the Complaint lacks any separate allegations of actionable conduct against DCG, which is merely DBRI's parent and a holding company, requiring that DCG be dismissed as a defendant.

## II.    <u>BACKGROUND</u>

DBRI is a Dallas-based barbecue business that Plaintiff alleges "operates on a franchise model[.]"[3] DCG is a holding company and DBRI's parent.[4] In the Incident, a third-party hacker remotely installed malware on the separate computer servers of some "Dickey's Barbecue Pit" franchised restaurants and stole payment card information.[5] Plaintiff does not allege that the Incident impacted all of the nearly 500 Dickey's Barbecue Pit restaurants. Rather, Plaintiff cites online reports from October 2020 stating that just "some [of the] 156 Dickey's locations across 30 states likely had payment systems compromised by card-stealing malware[.]"[6] Plaintiff cites no reports mentioning theft of addresses, email addresses, or phone numbers—her sources focus solely on allegedly stolen payment card information.

After describing the Incident, Plaintiff takes a left turn and cites DBRI's online "Privacy Policy," which separately describes the types of information that DBRI customers may submit when they use *DBRI's* online services, rather than the payment card data that in-store customers give to specific franchised restaurants when they buy food. Plaintiff herself notes this distinction:

---

[3] *Id.* ¶ 18.
[4] *Id.* ¶ 10. The Complaint makes no substantive allegations against DCG.
[5] *Id.* ¶ 13.
[6] *Id.* ¶ 1 n.1 (citing https://krebsonsecurity.com/tag/dickeys-barbeque-breach/); *accord id.* ¶ 2 n.3 (citing https://www.securityweek.com/dickeys-barbecue-pit-investigating-possible-breach-affecting-3m-payment-cards), ¶ 13 (alleging that the Incident affected "over 100 Dickey's restaurant locations across approximately 30 states").

<u>DEFENDANTS' MOTION TO DISMISS</u>
<u>PLAINTIFFS' COMPLAINT AND BRIEF IN SUPPORT</u> – Page 3

"According to Dickey's Privacy Policy, whenever a customer registers on Dickey's website, makes a purchase request, or consents to participating in a Dickey's promotion, Dickey's collects and stores the following types of information: the customer's name, address, email address, telephone number, and payment card information."[7] Plaintiff refers to this information collected through DBRI's website as personally identifiable information, or "PII," and then she conflates that data with the payment card information stolen in the Incident throughout her Complaint.[8]

Plaintiff does not say if, when, or where she may have used her payment card at a Dickey's franchised restaurant, or what information of hers she believes the Incident may have compromised.[9] Plaintiff's reference to DBRI's online privacy policy and her allegations that PII was stolen—information such as "the customer's name, address, email address, telephone number, and payment card information"[10]—suggests that Plaintiff may have "register[ed] on Dickey's website, ma[de] a purchase request, or consent[ed] to participating in a Dickey's promotion,"[11] and may not have been a payment card customer of any impacted Dickey's franchised restaurant at all.[12] Still, Plaintiff has sued Defendants, looking to represent a putative nationwide class and asserting various claims arising from the Incident.

### III.   APPLICABLE LEGAL STANDARD

Plaintiff's claims fail under Rule 12(b)(6), which requires Plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."[13] A claim is plausible only "when the plaintiff

---

[7] *Id.* ¶ 12.
[8] *Id.* ¶ 25 (alleging that PII was "stolen in the Data Breach at issue in this action").
[9] *Id.* ¶ 8.
[10] *Id.* ¶ 12
[11] *Id.*
[12] Any alleged transaction through DBRI's website would be subject to DBRI's online terms, including its limitation on liability and class action waiver. *See* https://www.dickeys.com/legal/terms-and-conditions (last visited Mar. 8, 2021). It would also form an express contract obviating any implied contract claim.
[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013).

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[14]

To that end, the Complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[15] The "[f]actual allegations of [the Complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[16] Allegations allowing the Court to infer just the "mere possibility" of wrongdoing cannot show that the pleader is entitled to relief.[17] Courts may not "strain to find inferences favorable to the plaintiffs," nor "accept conclusory allegations, unwarranted deductions, or legal conclusions."[18]

## IV.  ARGUMENT AND AUTHORITIES

### A.  Plaintiff's Claims Fail Because She Does Not Plausibly Plead Causation and Damages

Plaintiff's allegations are remarkably thin. Other than her Texas residency, Plaintiff's lone personal allegation is that she "is a victim of the Data Breach and has suffered damages thereby."[19] That scant allegation does not cut it under Rule 12(b)(6). Fatal to all of her claims, Plaintiff fails to plausibly allege causation and damages, elements of each recognized cause of action asserted in the Complaint.[20] Plaintiff's claims should thus be dismissed.

---

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15] *Twombly*, 550 U.S. at 555.

[16] *Id.*

[17] *See Iqbal*, 556 U.S. at 679 (citing FED. R. CIV. P. 8(a)(2)).

[18] *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citing *Southland Sec. Corp. v. Inspire Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[19] Compl. ¶ 8.

[20] *E.g.*, *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (negligence); *Bos v. Smith*, 556 S.W.3d 293, 303 (Tex. 2018) (breach of fiduciary duty); *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993) (invasion of privacy); *Mustafa v. Pennington*, No. 03-18-00081-CV, 2019 Tex. App. LEXIS 3253, at *10 (Tex. App.—Austin Apr. 24, 2019, no pet.) (breach of contract).

1.    **Plaintiff Does Not Allege That She Made a Payment Card Purchase at Any Dickey's Franchised Restaurant Impacted in the Incident**

Plaintiff first fails to plausibly allege causation or damages because it is unclear from the Complaint whether the Incident compromised Plaintiff's payment card information. Plaintiff conflates the payment card information that patrons give to Dickey's franchised restaurants when they dine at a particular restaurant with the other kinds of information that customers may choose to provide to DBRI online when they subscribe to DBRI's rewards program or enter into other transactions. This opacity dooms her claims.

On the one hand, Plaintiff describes the Incident, which compromised only payment card information. Plaintiff's Complaint relies only on online reports describing a hacker's theft of payment card information from the individual servers of Dickey's franchised restaurants. But on the other hand, Plaintiff refers to other types of information not caught up in the Incident. She cites DBRI's online privacy policy for the proposition that DBRI collects not just payment card information but also PII from online customers, and that (for reasons unclear given the payment card data incident alleged) Plaintiff's PII may have been compromised.

It is impossible to know from Plaintiff's allegations how she could be "a victim" of the Incident. Plaintiff cites several sources saying that a hacker stole "payment card records" from Dickey's franchised restaurants. But in the next breath Plaintiff identifies DBRI's online privacy policy and talks about information that customers provide to DBRI online. Defendants are left to guess what Plaintiff is alleging. Did Plaintiff use a payment card to make a purchase at any Dickey's franchised restaurant at all, let alone a restaurant impacted in the Incident? Or did she instead enroll online in DBRI's rewards program, and is she concerned that information was somehow compromised? And if so, why? The Complaint does not explain the very basis of this

lawsuit. Without plausible allegations that show how Plaintiff is "a victim of the Data Breach," Plaintiff cannot state a claim for relief.

### 2. Plaintiff Does Not Plausibly Allege Causation

Defendants are left to assume that Plaintiff claims that she used a payment card at a Dickey's franchised restaurant. But even if that is her allegation, Plaintiff fails to connect her alleged "harms" to the Incident. Plaintiff alleges that she has "been subject to the Data Breach or otherwise [has] had personal and financial information placed at serious and ongoing risk."[21] But this vague and conclusory assertion does not carry Plaintiff's pleading obligations. Plaintiff does not link any fraudulent charges (or any harm at all) to the Incident or account for the possibility that any fraudulent charges could have resulted from some other data security incident.[22] Plaintiff merely assumes that she suffered payment card fraud simply because the Incident occurred in the first place. But this makeshift *res ipsa loquitur* theory is not enough. Plaintiff does not tie her generalized harms to payment card purchases at a Dickey's franchised restaurant.[23] It is impossible to discern how the Incident affected her. Plaintiff's formulaic recitation of the elements of her claims is not enough.

Indeed, even if Plaintiff had alleged that the Incident compromised her payment card information, the loss of payment card information alone "is not indicative of data misuse that is fairly traceable" to DBRI, particularly "given the unfortunate frequency of credit card fraud."[24]

---

[21] Compl. ¶ 20.

[22] *See* Pew Research Center, *Americans and Cybersecurity* (Jan. 26, 2018), available at https://www.pewresearch.org/internet/2017/01/26/americans-and-cybersecurity/ (noting that more than half of U.S. citizens have experienced a "data breach" at some point) (last accessed Feb. 18, 2021).

[23] *See Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-cv-118, 2017 U.S. Dist. LEXIS 185166, at *20–21 (S.D. Ohio Aug. 16, 2017) (dismissing data-breach negligence claim on causation grounds because "Plaintiffs have alleged nothing more than time and sequence").

[24] *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14-MD-2586 ADM/TNL, 2018 U.S. Dist. LEXIS 36944, at *29–35 (D. Minn. Mar. 7, 2018), *aff'd* No. 18-1648, 2019 U.S. App. LEXIS 16291 (8th Cir. May 31, 2019).

Even the Complaint cites a 2017 news article remarking on the ubiquitous nature of data theft.[25] Plaintiff's allegations lack the basic elements of her claims. Without plausible allegations connecting Plaintiff's payment card use at an impacted Dickey's franchised restaurant to whatever harm she suffered, Plaintiff's claims fail for lack of causation.

### 3.    Plaintiff Does Not Plausibly Allege Damages

Plaintiff's damages allegations are just as frail. Texas law does not allow "recovery for damages that are speculative or conjectural."[26] Yet Plaintiff's case depends on speculation and conjecture. While Plaintiff argues that she was a "victim" of the Incident, Plaintiff does not allege that any fraudulent charges appeared on her payment card or, if they did, that her card issuer required her to pay those amounts.

Plaintiff instead lists a litany of generalized damages: (i) "actual identity theft" from compromised credit or debit card numbers; (ii) "loss of the opportunity to determine how [her] PII is used"; (iii) "the compromise, publication, and/or theft of [her] PII"; (iv) pre-emptive "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of [her] PII"; (v) undefined "lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate" the Incident; (vi) non-specific "costs associated with placing freezes on credit reports"; (vii) fear of "continued risk to [her] PII" from future theft; (viii) speculative "future costs in time, effort, and money" to repair any injury from the Incident; and (ix) an unexplained "diminished value of" the barbecue that Plaintiff bought.[27] But these purported harms are both speculative and contingent. Plaintiff

---

[25] *See* Compl. ¶ 26 n.22 (citing Brian Fung, *You can pretty much assume someone has your data. What to do next.*, Chi. Trib., (Sep. 21, 2017, 10:08 a.m.), available at https://www.chicagotribune.com/business/ct-identity-theft-protection-20170921-story.html (last visited Mar. 8, 2021)).

[26] *Reardon v. LightPath Techs., Inc.*, 183 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

[27] Compl. ¶ 100.

does not explain how the Incident compromised her payment card information. Nor does she describe how her identifying information would have been exposed or what damage she could have suffered. Plaintiff's ostensible risk of future harm is insufficiently concrete to state her claims because Plaintiff could have simply canceled her payment cards and requested new ones. Doing so would have "effectively eliminat[ed] the risk of credit card fraud in the future."[28] Plaintiff's claims fail because she has not alleged any actual damages.

**B.**   **Plaintiff's Invasion of Privacy Claim (Count II) Fails**

Plaintiff also fails to plausibly allege that the Incident amounted to an intentional invasion of privacy by Defendants under Texas law. Without factual support, Plaintiff accuses Defendants of invading her privacy by "allow[ing] unauthorized and unknown third parties unfettered access to and examination of" the payment card information compromised in the Incident.[29] She says the Incident somehow "constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion" by Defendants.[30] But her accusations are hollow.

In Texas, a claim for intrusion upon seclusion requires the plaintiff to establish (i) that the defendant intentionally intruded upon the plaintiff's solitude, seclusion, or private affairs; (ii) that a reasonable person would find the intrusion to be highly offensive; and (iii) that the plaintiff suffered an injury as a result.[31] Plaintiff's claim fails at each turn.

*First*, Plaintiff does not establish that the Incident compromised her payment card information at all. She does not allege that she provided any information—payment card or

---

[28] *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 2021 U.S. App. LEXIS 3055, at *26 (11th Cir. 2021); *accord In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 870 F.3d 763, 770 (8th Cir. 2017) (theft of payment card information alone cannot increase risk of identity theft); *Ables v. Brooks Bros. Grp., Inc.*, No. CV 17-4309-DMG (Ex), 2018 U.S. Dist. LEXIS 154681, at *15 (C.D. Cal. June 7, 2018) (theft of payment card information presents "no credible threat of real and immediate harm").
[29] Compl. ¶ 106.
[30] *Id.* ¶ 109.
[31] *See Fawcett v. Grosu*, 498 S.W.3d 650, 664 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

otherwise—to Defendants. She offers no facts showing that the Incident could have disturbed her seclusion, whatever she is alleging that may be, and her claim fails for that reason alone.

*Second*, Plaintiff does not plausibly allege a privacy interest in her payment card information, in any event. No court has stretched the cause of action this far and recognized that payment card information alone is a form of seclusion.[32] Intrusion upon seclusion is "conceptually a quasi-trespass tort,"[33] and Plaintiff alleges no facts establishing that payment card information, like credit or debit card numbers, constitutes a viable right to seclusion under Texas law. The very nature of payment card information belies this claim. Customers routinely share payment card data with merchants of all sorts to complete purchases—that is the purpose of payment cards. And card issuers can cancel compromised card numbers and new cards can be issued. Payment card information is not the type of sacrosanct information that Texas law protects as a privacy interest.

*Third*, intrusion upon seclusion is an intentional tort, and Plaintiff cannot plausibly contend that *Defendants* acted intentionally when a hacker broke into its franchised restaurants' servers to steal payment card data.[34] Plaintiff offers nothing allowing her to impute the criminal intent of third parties to Defendants. Any argument to the contrary would be implausible. The invasion of privacy claim cannot survive Rule 12(b)(6).

---

[32] *See Cunningham v. Greenstar Cap. Sols., LLC*, No. 4:18-cv-000161-ALM-CAN, 2018 U.S. Dist. LEXIS 163086, at *15 (E.D. Tex. Aug. 1, 2018) ("Texas courts have consistently held than an intrusion upon seclusion claim fails without evidence of a physical intrusion or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.") (internal quotations omitted), adopted by 2018 U.S. Dist. LEXIS 162719 (E.D. Tex. Sep. 24, 2018).

[33] *Amin v. UPS*, No. 3:19-cv-02578-X, 2020 U.S. Dist. LEXIS 107651, at *16 (N.D. Tex. June 18, 2020) (internal quotations omitted).

[34] *See Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex. 1973) (recognizing that invasion of privacy is a "willful" tort); *see also Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 U.S. Dist. LEXIS 152838, at *35 (S.D. Cal. Nov. 3, 2016) ("Plaintiff fails, for example, to allege any facts that would suggest that the data breach was an intentional violation of Plaintiff's and other class members' privacy, as opposed to merely a negligent one.").

C.  **Plaintiff's Breach of Implied Contract Claim (Count III) Fails**

The breach of implied contract claim is likewise infirm. As with her other claims, Plaintiff's theory rests on implausible allegations and a twisted reading of the law. Plaintiff alleges that she "paid money to Defendants in exchange for goods and services, as well as Defendants' promises to protect [her] PII from unauthorized disclosure."[35] She also claims that Defendant undertook an "obligation to use the PII of its customers for business purposes only, take reasonable steps to secure and safeguard that PII, and not make unauthorized disclosures of the PII to unauthorized third parties."[36] These allegations do not plausibly allege a breach of implied contract claim.

To begin with, Plaintiff asks the Court to make unjustified inferences about the Incident. For example, the Complaint lacks any plausible allegations that Defendants somehow "used" customer information for anything besides business purposes. To be sure, Defendants did not "use" payment card information for any non-business purpose or "disclose" it—a third-party hacker stole the data. The Incident was a crime committed against Dickey's franchised restaurants by a third party, undermining the very basis of Plaintiff's claim. Defendants did not "use" or "disclose" Plaintiff's payment card information any more than a bank uses or discloses its customer's money stolen in a robbery.

---

[35] Compl. ¶ 116.
[36] *Id.* ¶ 119.

What is more, Plaintiff's "unilateral and subjective expectations do not give rise to enforceable contracts" for data security.[37] Simply "claiming that an implied contract arose from" the purchase of barbecue "is insufficient to defeat a motion to dismiss."[38]

Allowing Plaintiff's theory to proceed would distort Texas contract law. An implied contract is formed only when the parties' assent can be inferred from the parties' dealing or performance.[39] Plaintiff does not allege facts suggesting that DBRI or DCG ever agreed to take on specific data security obligations so that assent could be inferred. Plaintiff alleges no interaction with Defendants at all. At most, Plaintiff alleges that she contracted with an unidentified Dickey's franchised restaurant to pay for and receive food, and there are no facts that could support a breach of that basic agreement.[40] Plaintiff's allegations cannot support a breach of implied contract claim.

### D.      Plaintiff's Unjust Enrichment Claim (Count IV) Fails

Plaintiff does not plead a valid unjust enrichment claim, either. Plaintiff implausibly asserts that she "conferred a monetary benefit on Defendants" because she bought "goods and services" from a Dickey's franchised restaurant and believes that some of her purchase price was "to pay for the administrative costs of data management and security."[41] Plaintiff appears to contend that she

---

[37] *Lovell v. P.F. Chang's China Bistro, Inc.*, No. C14-1152RSL, 2015 U.S. Dist. LEXIS 112101, at *11 (W.D. Wash. Mar. 27, 2015) ("Plaintiff provides no evidence from which one could plausibly infer that defendant intended to contractually bind itself to a general standard of reasonable care or any particular cybersecurity standard or protocol by accepting payment via a credit or debit card."); *see also Derrick v. Gillman Cos.*, No. H-17-2834, 2018 U.S. Dist. LEXIS 38817, at *5–6 (S.D. Tex. Mar. 9, 2018) (dismissing implied contract claim based on fabricated duty "to safeguard personal data of consumers"); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017); *In re Zappos.com, Inc.*, No. 3:12-cv-00325-RCJ-VPC, 2013 U.S. Dist. LEXIS 128155, at *15–16 (D. Nev. Sep. 9, 2013) (recognizing that "unilateral statements of fact alleged as to the safety of customers' data do not create any contractual obligations").
[38] *Longenecker-Wells v. Benecard Servs. Inc.*, 658 F. App'x 659, 662 (3d Cir. 2016).
[39] *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009).
[40] *See In re Zappos.com, Inc.*, 2013 U.S. Dist. LEXIS 128155, at *15 (recognizing that the only contract formed was that "customers agreed to pay money for goods").
[41] Compl. ¶¶ 138–40.

paid for food, she received food, but because the Incident occurred, she wants her money back. These allegations do not state an unjust enrichment claim.

In the first place, Texas has not recognized unjust enrichment as an independent cause of action.[42] But even if unjust enrichment were a valid claim in Texas, Plaintiff has not plausibly shown that her apparent purchase from a Dickey's franchised restaurant (whatever or whenever it might have been) unjustly enriched Defendants. Plaintiff presumably paid for and received food— she did not "pay for a side order of data security and protection."[43] Indeed, Plaintiff does not allege that she paid more using a payment card than she would have if she had paid cash. She also does not allege any defects in the products. In the same vein as her breach of implied contract claim, Plaintiff looks to impute legal duties on Defendants that simply do not exist. The unjust enrichment claim should be dismissed.

**E.    Plaintiff's Breach of Fiduciary Duty Claim (Count V) Fails**

Plaintiff's claim for breach of fiduciary duty also fails. To prove breach of fiduciary duty under Texas law, Plaintiff would have to establish that (i) Plaintiff and Defendants had a fiduciary relationship; (ii) Defendants breached their fiduciary duty to Plaintiff; and (iii) Defendants' breach caused injury to Plaintiff or led to a benefit to Defendants.[44] Plaintiff cannot succeed on this claim.

Neither DBRI nor DCG—a franchisor and its holding company—are fiduciaries to Plaintiff, who, at most, alleges to be a customer of an unidentified Dickey's franchised restaurant

---

[42] *See Elias v. Pilo*, 781 F. App'x 336, 338 n.3 (5th Cir. 2019) (per curiam) ("Courts of appeals in Texas appear split on whether unjust enrichment is an independent cause of action."); *Roach v. Berland*, No. 3:13-cv-4640-D, 2015 U.S. Dist. LEXIS 115786, at *4 (N.D. Tex. Aug. 31, 2015) ("This court has previously held that Texas law does not recognize an independent cause of action for unjust enrichment.").

[43] *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) ("Irwin paid for food products. She did not pay for a side order of data security and protection; it was merely incident to her food purchase[.]"); *see also Gordon v. Chipotle Mex. Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) ("Plaintiffs paid for burritos; Plaintiffs received burritos.").

[44] *First United Pentecostal Church v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

in some time. In Texas, a "fiduciary relationship may arise from a variety of relationships where the parties are 'under a duty to act for or give advice for the benefit of another upon matters within the scope of their relation.'"[45] Texas recognizes two types of fiduciary duties: formal and informal.[46] A formal relationship only "arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint ventures."[47] Plaintiff alleges no formal relationship with Defendants that could sustain a formal fiduciary duty.

Nor has Plaintiff alleged an informal fiduciary relationship with Defendants arising "from a moral, social, domestic or purely personal relationship of trust and confidence."[48] In fact, Plaintiff alleges no facts showing she had a relationship with Defendants at all, let alone a preexisting relationship of trust and confidence, and even then, "not every relationship involving a high degree of trust and confident rises to the stature of a fiduciary relationship."[49] Plaintiff's claim is unviable.

Texas courts emphasize that an informal fiduciary duty "imposes extraordinary duties" and requires the fiduciary to "put the interests of the beneficiary ahead of its own if the need arises."[50] To that end, "[a] party claiming the existence of an informal fiduciary relationship (confidential relationship) must have been accustomed to being guided by the judgment or advice of the other."[51]

---

[45] *ARA Auto. Grp. v. Cent. Garage, Inc*., 124 F.3d 720, 723 (5th Cir. 1997) (citing *Tex. Bank & Tr. Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980)).
[46] *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, pet. denied).
[47] *Id.*
[48] *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (per curiam) (internal quotations omitted).
[49] *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997); *accord McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829 (Tex. App.—Dallas 2010, no pet.) (recognizing that the "mere fact that one party to a relationship subjectively trusts the other does not indicate the existence of a fiduciary relationship").
[50] *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc*., 55 F.3d 181, 188 (5th Cir. 1995).
[51] *Robbins Ranch Subdivision Homeowners' Ass'n v. Partners of Benchmark Props., L.P.*, No. 12-18-00317-CV, 2019 Tex. App. LEXIS 3913, at *6 (Tex. App.-Tyler May 15, 2019, pet. denied) (mem. op.).

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT AND BRIEF IN SUPPORT – Page 14**

As the Dallas Court of Appeals has noted, "[a] fiduciary relationship is an extraordinary one and will not be created lightly."[52]

These facts cannot create an "extraordinary" fiduciary relationship here. At most, Plaintiff alleges that she bought barbecue from a Dickey's franchised restaurant. Even with that generous interpretation, no authority in Texas would establish a fiduciary duty between a customer and a merchant under these facts, let alone a fiduciary relationship between a customer and a merchant's franchisor or the franchisor's holding company. Recognizing a fiduciary relationship here would induce a tectonic shift in Texas fiduciary duty law.

Underscoring the frailty of her claim, Plaintiff bizarrely cites U.S. Department of Health and Human Services HIPAA regulations outlining the administrative safeguards that a "covered entity" or "business associate" must protect health care information under the HIPAA Security Rule, which has nothing to do with buying barbecue with a credit card (and also affords no private right of action when properly applied).[53] The Court should reject Plaintiff's absurd attempts to manufacture a claim from these threadbare facts.

## F.    Plaintiff's Breach of Confidence Claim (Count VI) Fails

Plaintiff's breach of confidence claim is out of place. Breach of confidence claims in Texas appear in cases involving misappropriated trade secrets.[54] This is not a trade secrets case, and Plaintiff's breach of confidence claim makes no sense in the context of her allegations. At best, Plaintiff has duplicated her breach of fiduciary duty claim. For the same reasons that Plaintiff's breach of fiduciary duty claim fails, her breach of confidence claim also fails.

---

[52] *McAfee*, 316 S.W.3d at 829.
[53] *See* Compl. ¶¶ 154–155 (citing 45 C.F.R. §§ 164.308(a)(1), 164.308(a)(6)(i)).
[54] *See, e.g.*, *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 544 (S.D. Tex. 2011); *U.S. Sporting Prods. v. Johnny Stewart Game Calls*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, pet. denied); *see also Tavana v. GTE Sw.*, No. 05-97-00664-CV, 1999 Tex. App. LEXIS 5365, at *7 (Tex. App.—Dallas July 21, 1999).

## G.    Plaintiff Alleges No Actionable Conduct Against DCG

Finally, all claims against DCG should be dismissed because the Complaint does not allege that DCG engaged in any actionable conduct. Plaintiff simply lumps Defendants together in group pleading and labels them "Dickey's," with no allegations to support concert of action or piercing the corporate form. The only allegations against DCG are that it is DBRI's parent company.[55] But an entity's status as a parent company cannot establish liability.[56] Plaintiff alleges no facts that could allow the Court to draw a reasonable inference that DCG is liable to Plaintiff for any conduct. Plaintiff's group-pleading allegations against "Dickey's" cannot state a claim against DCG.

## V.    CONCLUSION

For these reasons, Defendants ask the Court to dismiss the Complaint [Dkt. 1-4] with prejudice.

---

[55] Compl. ¶ 10.
[56] *See Haase v. Countrywide Home Loans, Inc.*, No. H-12-1538, 2012 U.S. Dist. LEXIS 192474, at *14 (S.D. Tex. Nov. 1, 2012) (ruling that plaintiff's labeling of all bank entity defendants as "Lender" was insufficient under Rule 8 and deciding that such allegations "are to be disregarded in determining whether a claim has been stated"); *see also Atkins v. Hasan*, No. 15 CV 203, 2015 U.S. Dist. LEXIS 80176, at *7 (N.D. Ill. 2015) ("Details about who did what are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under Rule 8 of the Federal Rules of Civil Procedure, a claim to relief must include such particulars.").

Respectfully submitted,

/s/ *Christopher S. Dodrill*
Christopher S. Dodrill
Texas Bar No. 24110696
dodrillc@gtlaw.com
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 76262
Tel.: (214) 665-3600
Fax: (214) 665-3601

Ian C. Ballon (admitted pro hac vice)
ballon@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Tel.: (650) 289-7881
Fax: (650) 328-8508

*Counsel for Defendants*
*Dickey's Barbecue Restaurants, Inc. and*
*Dickey's Capital Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record through the Court's CM/ECF system on March 8, 2021.

/s/ *Christopher S. Dodrill*